UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PORTFOLIO TECHNOLOGIES, INC.,
an Illinois corporation,

    Plaintiff,                                          Case No. 1:05-cv-159

v                                                 Hon. Wendell A. Miles

INTELLX INC., a Michigan corporation,
and BRIAN OSTERBERG, an individual,

    Defendants.
_____/


OPINION AND ORDER ON DEFENDANTS' MOTION
TO STAY LITIGATION OR TRANSFER VENUE


       This is an action for patent infringement. The matter is currently before the court on a motion by the defendants (docket no. 5) to stay the case or, alternatively, to transfer the case to the District of New Jersey, the site of two other related actions. Plaintiff has opposed the motion. For the reasons to follow, the court GRANTS the motion to stay.


**I**

       Plaintiff Portfolio Technologies, Inc. ("Portfolio") is an Illinois corporation which has its principal place of business in Chicago, Illinois. Defendant Intellx Inc. ("Intellx") is a Michigan corporation which has its principal place of business in Petoskey, Michigan. Defendant Brian Osterberg ("Osterberg") is the president and majority shareholder of Intellx, and he resides in Michigan.

       Portfolio alleges that since 1998, it has been the owner by assignment of U.S. Patent No.

5,027,831 ("the '031 patent") and its continuation in part, U.S. Patent No. 5,082,004 ("the '004 patent") (collectively, "the patents"). The patents cover condoms, including one marketed by Portfolio as "Pleasure Plus" since 1999. Portfolio alleges that it obtained the assignment of the patents from the bankruptcy estate of Reddy Laboratories International, Limited ("Reddy Laboratories").

Reddy Laboratories is a Bermuda corporation formed by an individual named Alla Venkata Krishna Reddy ("Reddy"), who resides in New Jersey. Reddy, who was the inventor of the "Pleasure Plus" condom and the original owner of the patents, assigned his rights in them to Reddy Laboratories. (Reddy reserved rights in the patents only within the country of India.) In 1992, Reddy Laboratories began manufacturing and selling condoms, made pursuant to the patents, under the "Pleasure Plus" mark.

However, Reddy Laboratories was apparently not financially sound despite some success with the "Pleasure Plus" condoms. In 1995, an involuntary petition was filed against Reddy Laboratories in the United States Bankruptcy Court for the District of New Jersey. (This was the second involuntary petition filed against the company; the first, filed in the District of Illinois in 1993, had been dismissed in 1994.) The largest unsecured creditor of Reddy Laboratories was John E. Rogers ("Rogers"). In the hopes of being able to purchase and exploit the assets of Reddy Laboratories, Rogers and other investors formed Portfolio. The bankruptcy case was resolved in 1998, when the bankruptcy judge ordered the sale of all of the assets of Reddy Laboratories – including its patents and the PLEASURE PLUS trademark – to Portfolio. In 1999, Portfolio began manufacturing, distributing, and selling "Pleasure Plus" condoms under the patents.

At some point, Reddy developed another condom product, known as the "Inspiral" condom. Through an Indian corporation known as Reddy Medtech, Limited or Medtech Products Limited ("Medtech") of which he was chairman and principal shareholder, Reddy began preparing to sell and/or distribute "Inspiral" condoms in the United States, using Intellx as a distributor. In March, 1999, after learning of Reddy's plans, Portfolio filed an action against Reddy and Medtech in the United States District Court for the District of New Jersey. Alleging that the "Inspiral" condom incorporates a design which infringes claims of both the '031 and '004 patents used in the design of its "Pleasure Plus" condom, Portfolio asserted federal claims of patent infringement and trademark infringement, in addition to claims under New Jersey law.

In the New Jersey federal action, Portfolio filed a motion for preliminary injunction enjoining Reddy and Medtech from infringing the patents. On May 21, 1999, the United States District Judge assigned to the case issued a decision denying Portfolio's motion, concluding that Portfolio had failed to establish a likelihood of success on the merits in proving that the "Inspiral" condom infringed the patents either literally or under the doctrine of equivalents. Portfolio appealed the decision to the United States Court of Appeals for the Federal Circuit.

The docket of the New Jersey action indicates that in February, 2000, while its appeal was still pending, Portfolio submitted a written request asking the district judge to stay the case during the pendency of the appeal. The defendants consented to the request, and on February 25, 2000, the district judge issued an order administratively terminating the case. Less than two months later, on April 20, 2000, the Federal Circuit issued an unpublished decision affirming the denial of the preliminary injunction and remanded the case back to the district court in New Jersey for further proceedings on the merits. <u>Portfolio Technologies, Inc. v. Reddy Medtech,</u>

3

Ltd., No. 99-1456, 2000 U.S. App. LEXIS 6961 (Fed. Cir. Apr. 19, 2000).

Notwithstanding the remand, the New Jersey federal docket reflects no efforts by Portfolio to have the action against Reddy and Medtech re-opened since Portfolio urged the stay of the action in February, 2000.  Indeed, the docket of the New Jersey action reflects no substantive activity in the case during the past five years since the Federal Circuit's judgment was docketed on May 15, 2000.

On August 4, 2004, however, Portfolio filed another suit in the United States District Court for the Northern District of Illinois alleging infringement of the '004 patent.  In that case, Portfolio sued Church & Dwight Co, Inc. ("Church & Dwight"), a Delaware corporation having officers in New Jersey, alleging that Church & Dwight was infringing the '004 patent by making, distributing, and selling yet another condom, marketed as "Twisted Pleasure" and sold under the Trojan brand, which fell within the scope of the '004 patent.  Church & Dwight moved to transfer the case to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). Portfolio opposed the motion.  On December 7, 2004, the Illinois federal judge issued a decision granting the motion, and the case was transferred to New Jersey effective December 27, 2004, where it was assigned to the same judge who had presided over the case against Reddy and Medtech.

On March 3, 2005, Portfolio filed the present action in this federal court against Intellx, the United States distributor for the "Inspiral" condom, and its president Osterberg, who had once worked for Medtech.  In its complaint, Portfolio alleges that Intellx and Osterberg have infringed the '004 patent.  Intellx and Osterberg responded to the complaint by filing the present motion.

## II

In their motion, Intellx and Osterberg seek an order staying this action pending the resolution of the parallel litigation in the District of New Jersey. Alternatively, the defendants seek a transfer to that district under 28 U.S.C. § 1404(a).

The parties have exhaustively briefed the issues of both stay and transfer.[1] After due consideration, the court concludes that a stay of this action is warranted.

"[T]he power to stay proceedings is incidental to the power inherent in every federal court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163 (1936). In addition, "[t]he federal courts long have recognized that the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs." West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 728 (5th Cir. 1985) (citing Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 72 S.Ct. 219 (1952) and Covell v. Heyman, 111 U.S. 176, 182 (1884)). Although there is no precise rule that, as between federal district courts, one court should defer to the other, 'the general principle is to avoid duplicative litigation.'" In re American Medical Systems, Inc., 75 F.3d 1069, 1088 (6th Cir. 1996) (quoting Colorado River Water

---

[1] W.D. Mich. L. Civ. R. 7.3 provides for only two briefs on non-dispositive motions (of which this is one): a brief in support, and a response brief by the opposing party(ies). Notwithstanding this limitation, the defendants took the liberty of filing, without leave of court, a reply brief in support of their motion. Apparently not content to let the defendants have the last word on the issues, Portfolio subsequently filed a motion seeking leave to file a "surreply" brief, which it appended to its motion. On the following day, the defendants once again took the liberty of filing additional "Authorities" which they contended were "relevant" to Portfolio's surreply brief. The court has reviewed and considered all of these submissions, although it is noted that the most recent two submissions address only the issue of transfer.

Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246 (1976)).  "The waste of judicial resources due to duplicative proceedings is plain[.]" American Medical Sys., 75 F.3d at 1088.

Following these principles, a "first-to-file rule" has developed, permitting a district court to transfer, stay, or dismiss a later-filed action "when a similar complaint has already been filed in another federal court[.]" Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 623 (9th Cir. 1991); see also West Gulf Maritime Ass'n, 751 F.2d at 722 (vacating an injunction and holding that "district court should have dismissed or stayed the action or should have transferred it to [district court] where a pending action involved closely related issues").  This rule has been applied "when two suits involving substantially the same parties and purpose have been filed in a concurrent jurisdiction." Plating Resources, Inc. v. UTI Corp., 47 F. Supp.2d 899, 903 (N.D. Ohio 1999).  "When comity among tribunals justifies giving priority to a particular suit, the other action (or actions) should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests." Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co., 203 F.3d 442, 444 (7th Cir. 2000).  It is a stay, not a dismissal, which the defendants seek here.

Both this action and the two New Jersey federal actions involve the same plaintiff and the same patent.  The defendants in this action are involved in the distribution of the same product (the "Pleasure Plus" condom) which is at issue in the first-filed New Jersey action, in which the inventor and manufacturer are defendants.  Although all of the issues are not identical, "the presence of identical defendants in two concurrent federal actions is not a requirement to demonstrate duplication of the facts and issues." Wolf Designs, Inc. v. Donald McEvoy Ltd.,

6

Inc., 341 F.Supp.2d 639, 643-644 (N.D. Tex. 2004).  Indeed, the Supreme Court has expressed its disagreement with the suggestion "that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical."  Landis, 299 U.S. at 254, 57 S.Ct. 163.  "The 'crucial inquiry' is one of substantial overlap of the issues[.]"  Wolf Designs, 341 F. Supp.2d at 643 (citation omitted).  "Where duplication is demonstrated, the general rule is that the later-filed action defer to the prior-filed one."  Id. (citations omitted).

Although exceptions to the first-to-file rule are rare, certain compelling circumstances may render the rule inapplicable.  Boatmen's First Nat'l Bank of Kansas City v. Kansas Public Employees Retirement Sys., 57 F.3d 638, 641 (8th Cir. 1995); Equal Employment Opportunity Commission v. University of Pennsylvania, 850 F.2d 969, 976 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S.Ct. 577 (1990); see Kahn v. General Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989) ("The general rule ... is that 'as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances") (citations omitted).  Bad faith, forum shopping, and an anticipatory race to the courthouse are some of the considerations which might justify departure from the rule.  Alltrade, 946 F.2d at 628; see Boatmen's, 57 F.3d at 641; University of Pennsylvania, 850 F.2d at 972. Another consideration which might justify departure from the rule is convenience of the parties.  Serco Servs. Co. v. Kelley Co., Inc., 51 F.3d 1037, 1039 (Fed. Cir. 1995).  Generally,  the plaintiff in the second-filed suit "bears the burden of showing any special circumstances which justify a divergence from the 'first-to-file' rule. Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co., 34 F.Supp.2d 1092, 1094 (N.D. Ill. 1999), appeal dismissed, 203 F.3d 442 (7th Cir. 2000).  "The

7

letter and spirit of the first-file rule ... are grounded in equitable principles[,]" E.E.O.C. v. University of Pennsylvania, 850 F.2d at 977, and therefore the court looks to the actions of all relevant parties in determining its application.

Here, application of the first-to-file rule counsels strongly in favor of granting a stay during the pendency not only of the first-filed New Jersey action but also of the second-filed action later transferred to that court.  All three actions involve the claims of the '004 patent.  The potential for duplication of effort and inconsistency are clear and cannot reasonably be undisputed.

Portfolio has not shown the existence of any special circumstances which would justify a divergence from the first-to-file rule.  Portfolio instead argues that the burden is on the defendants to show why this case should not proceed.  Landis requires the movant seeking a stay to "make out a clear case of hardship or inequity in being required to go forward, *if* there is even a fair possibility that the stay for which he prays will work damage to someone else."  299 U.S. at 255, 57 S.Ct. at 166 (emphasis supplied); see also Clinton v. Jones, 520 U.S. 681, 708, 117 S.Ct. 1636, 1651 (1997) ("The proponent of a stay bears the burden of establishing its need"); Ohio Environmental Council v. United States District Court, Southern District of Ohio, Eastern Division, 565 F.2d 393, 396 (6th Cir. 1977) ("the burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order").  Landis, however, involved a stay of cases brought by two different plaintiffs in favor of a third action to which neither of the plaintiffs was a party, and, according to the Court in that case, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the

rights of both." Id. But Portfolio is no stranger to the New Jersey actions; it is plaintiff in both. And here, a stay is justified by the pendency of plaintiff's two earlier-filed actions and the resulting risk of both duplication of effort and inconsistency of result.

Portfolio seemingly argues that it will be harmed by a stay of this action because such a stay will in effect permit Intellx and Osterberg to continue to distribute the allegedly infringing product while the New Jersey case remains pending. However, the court concludes that there is no possibility here that a stay will cause cognizable damage to Portfolio. If Portfolio truly believes that the distribution of the "Inspiral" condom poses the risk of imminent harm to its patent rights, then Portfolio, which is the plaintiff in the first-filed action, may seek to re-open that action – long dormant for reasons known to Portfolio – and seek leave to amend its complaint in that New Jersey action in order to sue Intellx as distributor.[2] Osterberg would undoubtedly, as president of Intellx, be bound by any injunction issued in that action even if he could not, for reasons of personal jurisdiction, venue, or whatever, be made a nominal party to it.[3] See Fed.R.Civ.P. 65(d) (providing that "[e]very order granting an injunction . . . is binding

---

[2]Indeed, in its complaint filed in the New Jersey action on March 1, 1999, Portfolio even at that early date appears to have identified Intellx as the United States distributor of the "Inspiral" condom on behalf of Medtech. No. 2:00-CV-889-JAG, D.N.J., Complaint at 7, ¶ 22 (alleging that "[on information and belief, [Medtech] has retained as a United States distributor for condom products an entity known as Intell & X (or 'Intell & Ex')"). Notwithstanding this apparent knowledge, Portfolio elected not to sue Intellx at that time.

[3]Intellx has conceded that it is subject to personal jurisdiction in New Jersey because Intellx has placed the "Inspiral" condom "into the stream of commerce via its distribution chain and, as a result, the product was marketed and sold in New Jersey." Defendants' Reply Brief in Support of Their Motion to Stay Litigation or Transfer Venue at 2. For that reason, an action by Portfolio against Intellx would be properly venued in New Jersey. The law is clear that "venue in a patent infringement case includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced." VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583 (Fed. Cir. 1990).

only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise").

It seems reasonable to conclude that what is really at issue is that Portfolio fears risking another unfavorable ruling from the New Jersey federal court, which might explain at least in part why Portfolio has allowed the first-filed action there to remain dormant for such a long period of time.  That Portfolio has offered no explanation whatsoever to this court for Portfolio's own neglect and inaction in that case raises the obvious concern that Portfolio is forum shopping.  However, if Portfolio is engaged in forum shopping, its efforts are ultimately misguided; because the Federal Circuit handles appeals in all patent cases, the impact of forum shopping in such cases is tempered.  Serco Servs., 51 F.3d at 1040.  What is clear is that Portfolio, which chose the New Jersey forum for the first-filed case, is in no position to complain of prejudice or tactical advantage from merely being obliged to conclude what it began in that forum before involving another federal court in a dispute involving the same patent and product, if not the same parties.  Under the circumstances, the court is not inclined to conclude that equity demands that the first-to-file rule be set aside.

The court is mindful of the admonition against imposing "a stay of indefinite duration in the absence of a pressing need."  Landis, 299 U.S. at 255, 57 S.Ct. at 166.  Here, although Portfolio is in a position to determine when to seek to re-open the first-filed New Jersey action, it may not be able to control precisely the speed with which that case, or the other case now pending there, will proceed.  Taking these circumstances into consideration, the court will order further proceedings in this action stayed until not longer than ten days after the final

determination of the New Jersey actions – both of them – by the United States District Court for the District of New Jersey.  If, however, the proceedings in those actions are unreasonably delayed for reasons beyond Portfolio's control, this court will consider a motion to modify the stay.

## Conclusion

For the foregoing reasons, the court grants the motion by the defendants to stay this action pending the resolution of the on-going, earlier-filed actions in the District of New Jersey.

IT IS HEREBY ORDERED that further proceedings in this action are therefore stayed until not longer than ten (10) days after the final determination, whether by judgment or by order of dismissal with prejudice, of Portfolio Technologies, Inc. v. Reddy Medtech, Ltd., No. 2:99-CV-889-JAG (D.N.J.) and Portfolio Technologies, Inc. v. Church & Dwight Co., Inc., No. 2:04-CV-6340-JAG-GDH (D.N.J.) by the United States District Court for the District of New Jersey. Portfolio, as plaintiff in both of those actions, shall promptly take affirmative steps to notify this court in writing in the event of a final determination of either action in New Jersey.

Because the court has granted the defendants' motion for stay, the court does not consider the issues raised by their alternative motion to transfer this case to the District of New Jersey.

So ordered this 19th day of May, 2005.

 /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge